UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CASE NO.1:25-CV-13885

JULIE NEE,
    Plaintiff

v.

KLM ROYAL DUTCH AIRLINES,
    Defendant

)
)
)
)
)
)
)
)
)
)
)
)
)
)

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff brings this civil action against KLM Royal Dutch Airlines and alleges as follows:

### **INTRODUCTION**

1. This is an action for damages, pursuant to the Convention for the Unification of Certain Rules for International Carriage by Air (Montreal, 28 May 1999) (hereinafter, the "Montreal Convention") and all relevant laws applicable or related thereto.

2. This action is based on bodily injuries to Plaintiff caused by a known defective seat during the KLM Royal Dutch Airlines KL617 flight from Amsterdam to Boston (hereinafter, the "subject flight"), an international carriage operated by defendant.

### **PARTIES**

1. The Plaintiff, Julie Nee, is an individual residing at 50 Choteau Road, Framingham, Middlesex County, Massachusetts.

2. The Defendant, KLM Royal Dutch Airlines (hereinafter "KLM"), is a foreign corporation headquartered in Amstelveen, Netherlands and has a place of business in the United States located at 125W 55th Street, 2nd Floor, New York, New York. KLM Royal Dutch Airlines is the flag carrier of the Netherlands and operates passenger and cargo services internationally.

## **JURISDICTION AND VENUE**

3. Subject matter jurisdiction is proper in the courts located in this country because this is a civil action arising under the federal treaty known as the Montreal Convention and its related laws and regulations.

4. The Montreal Convention grants this Court subject matter jurisdiction over the case because the subject flight was "international carriage" between two "State Parties" under Article 1 of the Montreal Convention, and because:
    a. Prior to the subject flight, the United States had signed, adopted, and ratified the Montreal Convention.
    b. At the time of the subject flight, Plaitniff maintained their principal and permanent residence in the United States.
    c. At the time of the subject flight, KLM operated, and still operates, services for the carriage of passengers by air, either on its own aircraft or on another carrier's aircraft pursuant to a commercial agreement to locations within the United States including and within Massachusetts.
    d. At the time of the subject flight, KLM conducted, and still conducts its business of carriage of passengers by air from premises in the United States that were leased or owned by KLM itself or by another carrier with which KLM had a commercial agreement.
    e. At the time of the subject flight, KLM had a place of business within the meaning of Article 33 of the Montreal Convention in the United States, including within Massachusetts.
    f. Plaintiff Julie Nee purchased the tickets for the subject flight – that is, the contract of carriage – in the United States.
    g. The destination of the subject flight, was Boston, MA, of the United States.

5. KLM furthermore does sufficient business in the Commonwealth of Massachsuetts and in the District of Massachusetts for this court to exercise personal jurisdiction over it, such that the maintenance of this action in this forum will not offend traditional notions of fair play and substantial justice.

6. Personal jurisdiction is proper in this Court under the Due Process Cluase of the U.S. Constitution becaused defendant KLM has sufficient minimum contacts with Massachusetts, because KLM has purposefully availed itself of the privilege of doing business in Massachusetts, and/or because the exercise of jurisdiction over KLM would be fair and reasonable.

7. Jurisdiction lies in this court based on The Montreal Convention, Article 33(2) in that the Montreal Convention confers national jurisdiction on the federal courts of the United States since Plaintiff is a citiizen of the United States and a resident of Middlesex County within the District of Massachusetts therefore making the venue proper in this District Court.

8. KLM operates international flights within, to, and/or from the United States and/or maintains offices in the United States, thereby fully satisfying Article 33(2) of the Montreal Convention.

9. Venue is proper pursuant to 28 U.S.C. § 1391(c) because KLM is subject to personal jurisdiction in this judicial district for the reasons set forth above.

## FACTS

10. On December 27, 2023, Julie Nee was flying on KLM Royal Dutch Airlines flight KL617 from Amsterdam to Boston, with arrival set for 19:05 EST at Logan Airport. Julie was assigned seat 19K and her husband, Luca, was assigned seat 19J.

11. At the beginning of the flight, two passengers (a husband and wife) started to put their bags away above row 18. The couple appeared to be in their 60s. The woman was short, and had white chin length hair. The man was quite tall and thin, over 6 feet, and had white hair and a mustache.

12. The wife sat in seat 18J and the husband in seat 18K. Immediately, when the man sat in seat 18K, the seat back came unlocked and flew into Julie's seat area with force. The couple immediately recognized the seat was broken and the wife walked towards the front of the plane and **alerted the flight attendant in business class** as this flight attendant was the closest one their seats. This flight attendant told the wife to report the incident to the flight attendant in their class. As the wife was out of her seat, the man attempted to get the seat to lock into position.

13. The wife walked by Julie and Luca's seats as she moved towards the back of the plane to report the defective chair to another flight attendant. The second flight attendant came to the scene and inspected the chair. The flight attendant had dark hair in a ponytail and appeared to be in her late 40s early 50s. The husband had gotten the defective chair to seemingly lock into place. The flight attendant said the seat "should be ok." The flight attendant said the only other available seats together were in the upper classes and they were not going to move the couple for this reason. The flight attendant then proceeded back to the rear of the plane to help other passengers board. Julie's husband witnessed this interaction.

14. At some point prior to landing, Julie got up to use the restroom. Upon her return, she sat in her seat and reached down to adjust her shoes. At this time, **the seat in front of Julie failed again**, hitting her with great force on the top of the head. The impact caused a concussion and spinal cord compression. Julie's vision went black and she had shooting pain where the impact of the seat had hit her head. The pain in her head was agnoizing.

15. The flight attendants were coming by for beverage service when Julie's husband alerted the same flight attendant who had previously come over to inspect the seat, that Julie was seriously injured by the seat. He asked if there was a medical bag with an ice pack, and

3

    the flight attendant replied that they had a medical bag on flight but did not have ice packs. The flight attendant then retrieved a red plastic bag from the drink cart, filled it with ice, tied the opening in a knot, and returned to her drink service. Julie reported what happened, that the seat in front of her was broken, and the flight attendant replied that there was nothing she could do. The KLM flight attendant never returned to Julie or her husband throughout the rest of the flight.

16. The pain from Julie's head intensified and radiated into a pounding headache behind her eyes and temples and persisted throughout the remainder of the flight.

17. Julie exited the plane and <u>alerted the same flight attendant of her injury again</u>, and asked her to make note of the seat failure so it could be repaired before the next passenger assigned to seat 19K was seated, to avoid a similar incident. The flight attendant reported that she noted the incident and the broken seat in the log.

18. Under the Montreal Convention, strict liability applies to international flights. Here, the flight was to arrive in Massachusetts. There is no comparative negligence and there is prior notice of the defective chair, which supports a clear showing of **<u>gross negligence</u>**, so no damages cap shall apply to this claim.

## COUNT I – MONTREAL CONVENTION LIABILITY

19. Plaintiff adopts and realleges the above paragraphs as though fully set forth herein.

20. On December 27, 2023, the Plaintiff sustained personal injuries on an international flight from Amsterdam to Boston, flight number KL617, operated by KLM Royal Dutch Airlines.

21. At the time of the subject flight on December 27, 2023, there was in force and effect in the United States and the Netherlands a certain multilateral treaty relating to the rules governing international carriage by air known as the Montreal Convention.

22. At the time of the injury, the Plaintiff engaged in international carriage as defined in Article 1(2) of the Montreal Convention and the same is, therefore, applicable to this action pursuant to Article 1(1) of the Montreal Convention.

23. Pursuant to Article 21 of the Montreal Convention, KLM is strictly liable for all damages and bodily injuries sustained by the Plaintiff onboard the international flight from the Netherlands to the United States.

24. The defective chair constitutes an "accident" pursuant to Article 21 of the Montreal Convention as such an event was external to the Plaintiff and entirely attributable to and within the control of KLM.

25. At all material times herein, KLM owed a duty to use reasonable care and exercise the highest degree of care in the safety of its passengers during their international carriage.

4

26. KLM breached its duty to use reasonable care and exercise the highest degree of care by, among other things, failing to ensure the safe transport of the Plaintiff while in the care of the defendant, failing to warn Plaintiff of impending harm, failure to adequately train the pilots and/or flight crew, and failing to foresee known defective conditions.

27. KLM is liable to the Plaintiff for all personal injuries exceeding the Special Drawing Rights ("SDR") as the Plaintiff's injuries are solely due to the negligence and/or wrongful actions or omissions of KLM.

28. KLM's liability under the Montreal Convention is absolute up to the SDR pursuant to Article 21(1).

29. Pursuant to Article 21(2) of the Montreal Convention, KLM is liable to the Plaintiff for all personal injury damages exceeding the SDR unless the carrier proves: (a) the injuries were not due to the negligence or other wrongful act or omission of the carrier or its servants or agents; or (b) the injuries were solely due to the negligence or other wrongful actions or omissions of a third party.

30. The Plaintiff's damages exceed the SDR.

31. At all times material, KLM was under a duty to use reasonable care and exercise the highest degree of care in the safety of its passengers during the international flight.

32. KLM breached its duty to use reasonable care and exercise the highest degree of care by, among other things:
    a. Failing to exercise reasonable care in the safety of its passengers, specifically the Plaintiff;
    b. Placing the Plaintiff—while in its control, direction, and instruction—in a position of immediate peril and risk of injuries;
    c. Failing to follow applicable rules, regulations, and protocols;
    d. Failing to properly train, supervise, and monitor flight crews;
    e. Failing to warn passengers on the subject flight of the danger due to KLM's failure to provide a flight crew capable, trained, and able to properly and safely ensure the aircraft was free of known defective conditions;
    f. Failing to foresee known defective conditions;
    g. Failing to take action to avoid the defective condition; and/or
    h. Otherwise being negligent and legally liable under applicable law.

33. As a result of KLM's breach of duty and other acts and omissions, the Plaintiff suffered severe injuries when the seat in front of her failed, hitting her with great force on the top of the head, despite previously alerting the flight attendant of the defective condition.

34. The Plaintiff, Julie Nee, suffered a traumatic brain injury, concussion, spinal cord injury, bulging disks at C6/C7 that required ACDEF surgery, and a permanent disability as a result of the known defective seat on the KL617 flight.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the full amount of her damages, plus interest, costs, expenses and attorney's fees, and any other relief that this Honorable Court deems meet and just.

## COUNT II -- NEGLIGENCE

35. The Plaintiff adopts and realleges the above paragraphs as though fully set forth herein.

36. At all times relevant, KLM, as a common carrier, was under the highest duty to ensure its passengers a safe voyage, and to exercise the highest degree of care to prevent injury of any kind during the subject flight.

37. KLM breached its duty to use reasonable care and exercise the highest degree of care by, among other things:
    a. Failing to exercise reasonable care in the safety of its passengers;
    b. Placing the Plaintiff in a position of immediate peril and risk of injuries;
    c. Failing to follow applicable regulations and protocol;
    d. Failing to ensure that the operators and flight crew of the subject aircraft used standard, reasonably prudent, and acceptable techniques and skills during the subject flight;
    e. Failing to property train, supervise, and monitor flight crews;
    f. Failking to warn passengers on the subject flight of the danger due to KLM's failure to provide a flight crew capable, trained, and able to properly and safely care for passengers during the subject flight; and/or
    g. Otherwise being negligent and legally liable under applicable law.

38. As a direct and proximate result of KLM's negligence, the Plaintiff suffered serious personal injuries, pain and suffering, and has been required to expend great sums of money for hospital and medical treatment.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the full amount of her damages, plus interest, costs, expenses and attorney's fees, and any other relief that this Honorable Court deems meet and just.

## COUNT III - GROSS NEGLIGENCE

39. The Plaintiff adopts and realleges the statements made in the above paragraphs as though fully set forth herein. Specifically, the defendant knew of the risks to customers from the defective chair, but failed to remedy or warn.

40. As a direct and proximate result of the willful, wanton, and reckless conduct constituting gross negligence by the Defendant, the Plaintiff, Julie Nee has suffered physical injury.

6

**WHEREFORE**, the Plaintiff demands judgment against the Defendant, for the full amount of her damages, plus interest, costs, expenses, and attorney's fees.

THE PLAINTIFF DEMANDS TRIAL BY JURY.

>Respectfully submitted,
>
>Plaintiff,
>By her attorney,
>
> /s/ Siobhan M. Surette
>Mark A. Cashman (BBO# 687800)
>Siobhan M. Surette (BBO#705921)
>**CASHMAN LAW FIRM, LLC**
>27 Congress Street, #401
>Salem, Massachusetts 01970
>978-306-7549
>mark@cashmanlegal.com
>siobhan@cashmanlegal.com

Dated: December 18, 2025